## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: _____

LS ENERGIA INC, a Florida corporation;
and LS ENERGIA INC, a Panamanian
corporation,

      Plaintiffs,

vs.

CORPORACIÓN ELÉCTRICA
NACIONAL S.A., a political subdivision of a
foreign state; PETRÓLEOS DE
VENEZUELA, S.A., a political subdivision
or an agency or instrumentality of a foreign
state; and BOLIVARIAN REPUBLIC OF
VENEZUELA, a foreign state,

      Defendants.

_____/

## VERIFIED COMPLAINT

Plaintiffs LS Energia Inc, a Florida corporation ("LS Florida") and LS Energia Inc, a Panamanian corporation ("LS Panama") (collectively, "LS Energia" or "Plaintiffs"), sue Defendants Corporación Eléctrica Nacional S.A. ("Corpoelec"), a political subdivision of a foreign state, Petróleos De Venezuela, S.A. ("PdVSA"), a political subdivision or an agency or instrumentality of a foreign state, and the Bolivarian Republic of Venezuela ("Venezuela"), a foreign state (collectively, the "Defendants"), and allege as follows:

## NATURE OF THE ACTION

1.      This is a civil action brought by LS Energia against (1) Corpoelec, a public utility organized under the Venezuelan Ministry for Electricity ("MPPEE"); (2) PdVSA, the Venezuelan state-owned oil and natural gas company and a shareholder of Corpoelec; and (3) Venezuela, a foreign state and shareholder of Corpoelec, each of which are not immune from this suit under the

Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 *et seq.* ("FSIA"). The purpose of this action is to recover an amount in excess of US$ 1.7 million, plus interest, owed by Defendants to LS Energia arising out of LS Energia's generation of electricity for the citizens and residents of Venezuela. LS Energia contracted with Corpoelec's predecessor[1] for the construction, installment, operation, and maintenance of a power plant in Venezuela. While LS Energia complied with all of its obligations, as Corpoelec has acknowledged on numerous occasions, Corpoelec has failed to make LS Energia whole by remitting payment in full. Accordingly, LS Energia brings this action to seek redress for its injuries caused by Defendants.

## THE PARTIES

2.      Plaintiff LS Florida is a corporation constituted under the laws of the State of Florida with its principal place of business in Plantation, Florida.

3.      Plaintiff LS Panama is a corporation constituted under the laws of the Republic of Panama with its principal place of business in Panama City, Panama.

4.      Defendant Corpoelec, a subsidiary entity of a ministry of the government of Venezuela, MPPEE, is a political subdivision of the foreign state pursuant to 28 U.S.C. § 1603(a) because Corpoelec's core functions are predominantly governmental, rather than commercial, in nature. The main purpose of Corpoelec is to provide a public service and basic need, electricity and power, to the constituents of the foreign state. Corpoelec is 75-percent owned by Venezuela, the foreign state, and 25-percent owned by PdVSA. Thus, Corpoelec is a "foreign state" pursuant to 28 U.S.C. § 1603(a), which includes a political subdivision of a foreign state.

5.      Defendant PdVSA, the Venezuelan state-owned oil and natural gas company, is a political subdivision of the foreign state of Venezuela pursuant to 28 U.S.C. § 1603(a) because its

---

[1] CADAFE, *Compañía Anónima De Administración y Fomento Eléctrico*.

core functions are predominantly governmental in that it provides most, if not all, of the oil and natural gas needed for the foreign state to operate and it conducts international transactions, which revenues are injected back into the Venezuelan government and economy. In the alternative, PdVSA is an "agency or instrumentality" of Venezuela pursuant to 28 U.S.C. § 1603(b) because (1) as a company with international presence and reach, it is a separate legal person with its own legal rights and obligations; (2) it is an organ or political subdivision of the foreign state; and (3) it is not a citizen of any state of the United States as set forth under 28 U.S.C. § 1332(c). Accordingly, PdVSA is a "foreign state" pursuant to 28 U.S.C. 28 U.S.C. § 1603(a), which includes a political subdivision of a foreign state, and which also includes an "agency or instrumentality of a foreign state" as defined under 28 U.S.C. § 1603(b).

6.      Defendant Venezuela is a "foreign state" pursuant to 28 U.S.C. § 1603(a).

## GENERAL ALLEGATIONS

7.      LS Energia is a company dedicated to the business of designing, building, operating, and maintaining power generation facilities worldwide. LS Energia operates and manages power plants for customers around the world, having set up more than 60 power plants since the company's first project was awarded in 1988.

8.      The history of LS Energia extends well beyond the incorporation of LS Florida and LS Panama. The first company to be formed in 1988 under the umbrella of LS Energia, owned entirely by José and Marisabel Tamayo (the "Tamayo family"), was Lake Shore Electric Sur America, C.A. ("Lake Shore"), a company constituted under the laws of Venezuela. Lake Shore was originally based and operated from its headquarters in Venezuela for approximately twenty years. Having first created Lake Shore as a startup company in Venezuela, the Tamayo family

continued building their startup to the point where, today, LS Energia is a global provider of power generation services.

9.     The Tamayo family relocated to South Florida in the late 2000s and transferred LS Energia's principal operations and assets outside of Venezuela. LS Florida was incorporated in 2008 to continue Lake Shore's business, and the executive management team settled in South Florida and commenced operations from South Florida. Two years later, in 2010, LS Panama was formed to support LS Florida in connection with all of LS Energia's operations and logistics worldwide. In addition to the LS Energia business, the Tamayo family has owned properties in South Florida for the last 20 years.

10.    Currently, Plantation, Florida is the home of LS Energia's executive headquarters—where its CEO, owners, and senior management team are located. Moreover, LS Energia maintains many operations and entities incorporated in countries throughout the world, including Spain, Angola, the Dominican Republic, and Venezuela.

11.    Corpoelec was created vis-à-vis Presidential Decree No. 5.330 on May 2, 2007, which was published in Venezuela's Official Gazette on July 31, 2007. At that time, Venezuela's then President Hugo Chávez merged several state-owned and private-owned power companies to form what became known as Corpoelec and declared a state of emergency concerning the provision of electricity. The state of emergency opened the door for the acquisition of electricity-generating units to increase the availability and reliability of electricity for the people of Venezuela.

12.    PdVSA is the Venezuelan state-owned oil and natural gas company responsible for exploration, production, refinement and exportation of oil, as well as exploration and production of natural gas. Venezuela owns 100 percent of the PdVSA shares.

13. In April 28, 2010, during Venezuela's well-documented national energy crisis, LS Energia and I.W. Group de Venezuela, C.A., a Venezuelan entity ("I.W. Group"), entered into an Energy Procurement Contract (the "EPC Contract")[2] with Corpoelec's predecessor, CADAFE,[3] for the purposes of (a) providing and securing the engineering, procurement, construction, and incorporation of 100 megawatts ("MW") of power through the installation and supply of two General Electric ("GE") model LM6000 gas turbines ("LM6000"), each consisting of 50 MW Independent System Operator ("ISO"), for installation at the Alfredo Salazar plant in Anaco in the State of Anzoátegui; and (b) the procurement and installation of the associated interconnected national system of two airconditioned transformers of 13.8/115 Kv 36/48/60 67.2 Mega Volt Amps ("MVA") (the "Power Generation Project"). The total amount to be paid to LS Energia under the EPC Contract is US$ 90,600,000.00. The installations at the Power Generation Project would augment the thermoelectric power capacity by allowing the incorporation of 100 MW ISO to the associated interconnected national system in an efficient and timely manner, thereby contributing to the betterment of the quality, availability and reliability of the electric power services in the region of the State of Anzoátegui. This was a major factor in Venezuela's ability to restore continued electricity services to the eastern part of the country. A true and correct copy of the executed EPC Contract is attached hereto as **Exhibit "A."**

---

[2] The EPC Contract is alternatively identified and referenced throughout the business relationship of the parties as contract no. "2010-CJ-0179."

[3] As described more fully below, with the issuance of Presidential Decree No. 5.330 on May 2, 2007, CADAFE, along with other Venezuelan companies, was wholly merged into and replaced by Corpoelec. This Presidential Decree had the main objective of reorganizing the national electric sector for the betterment of providing country-wide services and maximizing efficiency in energy production and operation. Thus, CADAFE merged into and became one legal entity together with Corpoelec effective on the third (3rd) year anniversary from the date the law was passed on July 31, 2007. Indeed, shortly after the EPC Contract was entered into, on July 31, 2010, CADAFE and Corpoelec were officially legally merged. Thus, Corpoelec assumed all of CADAFE's contractual rights and obligations under the EPC Contract.

14.     Under the EPC Contract, Corpoelec was entitled to withhold or retain certain payment percentages due and owing to LS Energia, calculated based upon the total of each respective payment, to ensure LS Energia's full and proper compliance with the EPC Contract as follows: (a) with regard to ensuring *strict contractual compliance*, Corpoelec could withhold ten percent of the total payments owed to LS Energia, and (b) with regard to ensuring *labor law compliance* and related payments to the labor force involved in the Power Generation Project, Corpoelec could withhold ten percent of the total payments owed to LS Energia. *See* Exhibit A ¶ 5. Materially, Corpoelec was obligated to reimburse all amounts withheld under these withholding provisions once LS Energia performed in full and Corpoelec confirmed compliance. *See id*.

15.     On February 2, 2010, Corpoelec issued a Letter of Credit in the amount of US$ 88,800,000 to LS Energia in Fort Lauderdale, Florida 33309, as the beneficiary. The Letter of Credit was to ensure, pursuant to the EPC Contract, the receipt and partial shipment of the equipment necessary for the Power Generation Project, which included, among other items, the two (2) GE LM6000 units. The port of loading was listed as Houston, USA.

16.     In addition to the Power Generation Project as detailed above, LS Energia agreed to perform additional tasks for Corpoelec at the direct request of Corpoelec, without any involvement from I.W. Group. Corpoelec's Board of Directors acknowledged, approved and authorized the additional works to be performed by LS Energia pursuant to the following two (2) directives: JD-085 dated September 30, 2014, and JD-129 dated November 25, 2014 (collectively, the "Corpoelec Directives"). The additional works consisted of operation and maintenance of the Power Generation Project exclusively by LS Energia (the "Additional Works").

17.     LS Energia offered to Corpoelec an appropriate timeframe for execution of the contract and completion of the project in comparison with other companies specialized in this area.

Further, LS Energia facilitated immediate availability of the equipment, utilized widely approved technology, and the equipment manufacturer enjoyed a widely recognized reputation for its excellent experience and quality in Venezuela. As recognized by Corpoelec, the equipment offered by LS Energia is highly efficient for systemic operation in critical conditions. The Units, as defined below, operate with gaseous fuel, improving its efficiency and environmental impact. In addition, Corpoelec found LS Energia's offer to be reasonable at a price of US$ 918.92 per KW.

18.     The Power Generation Project was of significant national importance as evidenced by the fact that Venezuela's National Electrical Command,[4] through Corpoelec's representatives, requested that LS Energia provide them with weekly reports of all activities, incidents, delays, labor relations, among other matters, because Venezuela had a supreme interest in maintaining very close monitoring of all electrical works.

19.     The two turbo generator units under the EPC Contract are identified respectively as TG-4, serial no. 1920267 ("Unit TG-4"), and TG-5, serial no. 192-412 ("Unit TG-5") (collectively, the "Units"). TG-4 became partially operational during peak hours beginning on May 5, 2011, and fully operational on July 10, 2011. TG-5 became operational on July 07, 2012. Accordingly, as of September 28, 2012, the parties executed and memorialized, pursuant to the EPC Contract, the successful Partial Delivery of the Units.

20.     As of September 2012, LS Energia had performed the majority of its contractual responsibilities under the EPC Contract, which services were expressly acknowledged by LS Energia and Corpoelec in an executed letter dated September 2012 (the "September 2012 Letter"). In the September 2012 Letter, and later in a letter dated October 2012 (the "October 16, 2012 Letter"), LS Energia highlighted a list of remaining tasks including, among others: the installation

---

[4] *Comando Eléctrico Nacional*.

of the Demineralized Water Treatment Plant for both of the Units, and the addition of SPRINT capability to the TG-5 Unit, which included on-turbine and off-turbine base hardware. True and correct copies of the September 2012 Letter and the October 16, 2012 Letter are attached hereto as **"Exhibit B"** and **"Exhibit C,"** respectively.

21.    Three years later, on October 1, 2015, LS Energia wrote to Corpoelec in a letter titled "Manifestation of Completion of Work,"[5] notifying Corpoelec that any tasks previously identified as outstanding had been successfully completed and thus requesting that the Final Acceptance of the Power Plant Project and other tasks take place on October 21, 2015. A true and correct copy of the Manifestation of Completion of Work letter is attached hereto as **"Exhibit D."**

22.    Corpoelec confirmed, acknowledged and memorialized LS Energia's completion of these outstanding tasks through an executed Final Inspection Minutes letter dated October 21, 2015 (the "Final Inspection Letter"),[6] whereby Corpoelec expressly confirmed, after the proper and complete installation and operation of the Units and Corpoelec's final inspection of the Units, that the completion of the tasks previously identified as outstanding had been successfully and finally completed, including: (i) the installation, commissioning, and startup of the Demineralized Water Treatment Plant, which plant was confirmed to be fully operational; (ii) the completion of the installation of the SPRINT system onto the Unit TG-5, and (iii) performance of operational tests for the SPRINT system for the Units. Moreover, Corpoelec confirmed there were no remaining contractual duties to be performed, all duties were performed fully and satisfactorily, and the Final Acceptance of the Power Generation Project should be executed to reflect the same. Corpoelec confirmed its satisfaction with the works performed via the executed Final Acceptance

---

[5] *Manifestación de Culminación de Obra.*
[6] *Minuta de Inspección Final.*

of the Power Generation Project[7] Letter dated October 21, 2015. A true and correct copy of the Final Inspection Letter and the Final Acceptance of the Power Generation Project Letter are attached hereto as **"Composite Exhibit E."**

23.      In order to request payment of the withheld amounts as described more fully above, an administrative closing was required pursuant to the EPC Contract, which requirement consists of a final accounting upon the completion of the Final Acceptance of the Power Generation Project, and upon Plaintiffs' submission of documents reflecting completion of its contractual tasks and request for an administrative closing. *See* Exhibit A ¶¶ 37, 43, 44.

24.      Notwithstanding LS Energia's repeated express requests for the administrative closing of the EPC Contract in order to receive the withheld payments from Corpoelec, Corpoelec failed to administratively close the EPC Contract and thus failed to remit the withheld payments as agreed under both the EPC Contract and the Directives.

25.      An unexpected issue arose in the beginning of 2016, whereby I.W. Group made unfounded demands for payment from Corpoelec for services performed solely by LS Energia. I.W. Group's demand for payment from Corpoelec for performance and services rendered by LS Energia, and not by I.W. Group, were improper and in contravention of the EPC Contract and the Directives. In April of 2016, I.W. Group alleged that Corpoelec failed to pay I.W. Group for services that I.W. Group did not even perform. Those allegations were untrue, as the EPC Contract had already concluded, and any works requested by Corpoelec after conclusion of the EPC Contract were requested solely of, and performed solely by, LS Energia.

26.      I.W. Group's request for payment initially caused delays and confusion. Later on, Corpoelec used I.W. Group's request and allegations as an excuse to avoid monies due and owing

---

[7] *Acta de Recepción Definitiva*.

to LS Energia, notwithstanding LS Energia's complete performance and repeated demands for the administrative closing of the EPC Contract.

27.     LS Energia again wrote to Corpoelec in a letter dated September 21, 2017, confirming, *inter alia*: (i) the EPC Contract was fully performed, as evidenced by the Final Acceptance; (ii) the retained amount of US$ 1,719, 096.58 was due and owing to LS Energia in light of its full and satisfactory performance, which performance was confirmed and acknowledged by Corpoelec as discussed above; and (iii) LS Energia had fully performed under the Directives and thus, the money was due and owing in favor of LS Energia. Via this letter, LS Energia again requested the administrative closing of the EPC Contract to trigger the payment of the outstanding amounts due to LS Energia. A true and correct copy of the September 21, 2017 letter is attached hereto as **"Exhibit F."**

28.     LS Energia sent another letter to Corpoelec in October of 2017, once again confirming that the EPC Contract had been fully performed and delivered to Corpoelec by 2011, and that subsequently, in mid-2015, LS Energia exclusively undertook new operation and maintenance obligations under a new agreement with Corpoelec as approved by the Directives. LS Energia confirmed its receipt of payments remitted by Corpoelec to LS Energia for the following invoice numbers,[8] which payments LS Energia received between February through May of 2015, minus the amounts withheld by Corpoelec under the EPC:

     i.  Invoice number: 111200/ Total US$ 3,026,252.76;

     ii.  Invoice number: 300100/ Total US$ 1,689,239.10;

     iii.  Invoice number: 100302/ Total US$ 50,000.00;

---

[8] Throughout the parties' business relationship, Plaintiffs have issued invoices to Corpoelec from Plaintiffs' headquarters in Fort Lauderdale, Florida, indicating FOB Houston.

       iv.  Invoice number: 700200/ Total US$ 3,829,991.14.

A true and correct copy of the Final Acceptance of the October 2017 letter is attached hereto as **"Exhibit G."**

    29.    The total of the invoices equals US$ 8,595,483, which, when multiplied by the 20 percent (20%) retention withheld by Corpoelec, equals the value currently due and owing to LS Energia of **US$ 1,719,096.58**.

    30.    In August 2018, Corpoelec finally and expressly confirmed that the Additional Works were performed and negotiated solely with LS Energia and Corpoelec, and that there was an absence of documents showing anything to the contrary to support I.W. Group's improper demands for payment. Most importantly, **Corpoelec admitted to LS Energia that the amount of US$ 1,719,096.58, corresponding to the permitted withholdings pending conclusion of LS Energia's obligations, remained due and owing** to LS Energia. Specifically, Corpoelec expressly stated in its communication that the only remaining relationship between the parties were the retention payments (the "August 2018 Letter"). A true and correct copy of the August 2018 Letter is attached hereto as **Exhibit "H."** Following this admission of indebtedness, interest at the rate of 12 % per annum began to accrue on the amounts due and owing beginning, at the very latest, in August 2018.

    31.    Later, on June 3, 2019, Corpoelec communicated to LS Energia via letter that an internal audit would be conducted to analyze the financial aspects of the EPC Contract.

    32.    On August 8, 2019, Corpoelec again sent a letter to LS Energia addressed to the Fort Lauderdale office, concerning a request for LS Energia to identify the amounts due and owing to LS Energia from Corpoelec as of the date of the letter. LS Energia responded to Corpoelec's request. Notwithstanding, Corpoelec has still failed to pay the withheld amounts.

33.     The facts reveal that LS Energia and Corpoelec exchanged many letters regarding the administrative closing of the EPC Contract, and the pending and outstanding payments due to LS Energia by Corpoelec. During those exchanges, not once did Corpoelec dispute or disclaim the US$ 1,719,096.58 due and owing to LS Energia.  In addition, under the EPC Contract, Corpoelec simply has no basis to continue retaining monies rightfully owed to LS Energia. Corpoelec's purported excuses for not remitting payment have been at best, negligent, and at worst, an intentional delay tactic to avoid payment for services received and enjoyed.

34.     In sum, it is undisputed that (i) the EPC Contract and the Directives are valid and binding; (ii) LS Energia installed the Units, delivering 100 MW of power generation output and services to a region in desperate need of electricity generation; (iii) Defendants failed to make payments on a substantial and material amount due and owing under the EPC Contract and the Directives despite repeated promises to do so; and (iv) Defendants have acknowledged, verbally, and in writing, that these substantial amounts remain due and owing, yet they have failed to pay. The total amounts owed to LS Energia as of April 1, 2021 are US$ 1,719,096.58, which represents the withheld payments under Clause 5 of the EPC Contract, not including interest.

35.     In a final attempt to collect the sums due and owing from Defendants prior to instituting this legal action, on February 20, 2021, LS Energia, through its attorneys, transmitted a demand letter to Corpoelec (the "Demand Letter"), requiring payment within 10 days of receipt of the demand letter to avoid resorting to litigation over the amounts that are acknowledged as due and owing. In the event of non-payment, LS Energia notified Corpoelec of its intention to file a lawsuit before this Court in an effort to collect the amounts due and owing. A true and correct copy of the Demand Letter is attached hereto as **"Exhibit I."**

36.     Corpoelec did not respond to LS Energia's Demand Letter by the deadline or at any time thereafter. Consequently, this litigation ensued.

37.     To the extent that Corpoelec is insolvent and unable to pay LS Energia, Defendants PdVSA and Venezuela—Corpoelec's shareholders—must pay the outstanding US$ 1,719,096.58.

38.     LS Energia has retained the undersigned attorneys to represent it in the prosecution of this action, and is obligated to pay such attorneys their reasonable fees and expenses.

39.     All conditions precedent to the bringing of this action have occurred, have been performed, or have been waived.

## JURISDICTION AND VENUE

40.     This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1330(a), which provides that "[t]he district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a "foreign state" within the meaning of 28 U.S.C. § 1603(a).

41.     Accordingly, this Court has jurisdiction over Defendants pursuant to 28 U.S.C. § 1330(a) and 28 U.S.C. § 1603(a).

42.     Defendants are not immune from the jurisdiction of this Court in this case under 28 U.S.C. § 1604 for the following reasons:

      (a)     Pursuant to 28 U.S.C. § 1605(a)(2), Defendants have performed acts in the United States, specifically through coordination and attendance of several important meetings held in Florida and Texas, in connection with a commercial activity elsewhere, specifically, the commercial activity of a private entity's, LS Energia, provision of power generation services through employment of LS Energia's equipment, or equipment commercially procured by LS Energia; and

      (b)     Pursuant to 28 U.S.C. § 1605(a)(2), Defendants have performed acts outside the territory of the United States in connection with a commercial activity, and said acts have caused a direct effect in the United States.

43.     More specifically, Defendants are not immune from the jurisdiction of this Court because they undertook acts that caused a direct effect in the United States, including, without limitation, in the following ways:

      (a)     Defendants affirmatively engaged LS Energia, in Venezuela and in Florida, for the purposes of comparing and evaluating LS Energia's proposals for the project against that of other market participants, and further negotiating: (i) the provision of electric services which LS Energia had the capacity of providing, (ii) the time frame for execution under the contract and completion of the project by LS Energia, and (iii) monetary costs for these services;

      (b)     Defendants agreed and were obligated to make payments to LS Energia for its contractually provided services in Venezuela, and said payments would have, and the lack of the payments did have, a direct and materially adverse effect on LS Energia in the United States;

      (c)     Defendants acknowledged substantial amounts remained due and owing to LS Energia and Defendants represented they would compensate LS Energia for its contractually provided services in Venezuela, and said promises of payment had a direct and substantial material effect on LS Energia in the United States;

14

(d)     Defendants failed to make full payments due to LS Energia for its provision of services, and said failures had and continue to have a direct, substantial, and material effect on LS Energia in the United States;

(e)     Defendants' failures to fully compensate LS Energia caused severe financial impact on the beneficial owners and the executive management team of LS Energia's entire global operations, all of whom are United States citizens residing in Florida, and thus, causing a direct effect in the United States; and

(f)     Defendants' failure to substantially and fully compensate LS Energia materially affected LS Energia's plans for continued growth in the United States, which effect included LS Energia being forced to reduce both local support staff and services in its offices in Florida, thereby causing a direct effect in the United States.

44.     This Court has jurisdiction over PdVSA pursuant to 28 U.S.C. § 1330(a) and 28 U.S.C. § 1603(a). PdVSA is so extensively controlled by its owner, Venezuela, that a relationship of principal and agent is created because, among other things: (i) Venezuela created PdVSA in the 1970s; (ii) Venezuela significantly and extensively controls PdVSA, including its day-to-day operations; (iii) Venezuela utilizes PdVSA's property as its own; (iv) Venezuela routinely ignores PdVSA's ordinary corporate formalities; (v) Venezuela affords PdVSA no independence from close political control; (vi) Venezuela habitually issues policies or directives that cause the instrumentality to act directly or on behalf of the sovereign state; and (vii) Venezuela requires PdVSA to obtain approvals for ordinary business decisions from Venezuela. More specifically, PdVSA discloses Venezuela's willingness to exert control over PdVSA and to direct PdVSA to

act against its interests as risk factors in its bond offering documents; PdVSA's Articles of Incorporation require that it adhere to policies established by the National Executive; PdVSA, via social media platforms, repeatedly asserts that "PdVSA es Venezuela" (which means "PdVSA is Venezuela"), including through the use of the hashtag #PDVSAesVENEZUELA; Venezuela appoints PdVSA's Board of Directors, and Venezuelan Government Ministers are members or have been members of PdVSA's Board of Directors; Venezuela's Oil Ministry and PdVSA share physical office space and Venezuela's Oil Ministry is habitually appointed and serves as PdVSA's President and Director; Venezuela directs PdVSA to sell oil internationally and dictates the sales price; Venezuela dictates the price at which oil is sold domestically; Venezuela instructs and directs PdVSA to provide oil to Russia and China as repayment for loans those countries have previously made to Venezuela; PdVSA has been known to pay for Venezuela's arbitration fees in international investment arbitrations under the International Centre for Settlement of Investment Disputes; Venezuela engages in currency manipulation by controlling PdVSA's conversion of U.S. Dollars to Venezuelan Bolivars for the exclusive benefit of Venezuela and to PdVSA's detriment; and Venezuela uses PdVSA aircraft for Venezuelan officials' private use.

45.     This Court has jurisdiction over Venezuela pursuant to 28 U.S.C. § 1330(a) and 28 U.S.C. § 1603(a). Venezuela exerts extensive control not just over PdVSA, but also over Corpoelec, as evidenced by the very creation of Corpoelec at Venezuela's instructions.

46.     Supplemental jurisdiction exists over state law causes of action pursuant to 28 U.S.C. § 1367.

47.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) and 28 U.S.C. § 1391(f)(1), in that a substantial and material part of the events or omissions giving rise to the Verified Complaint occurred within this District.

48.     Defendants are subject to service of process pursuant to 28 U.S.C. § 1608.

49.     LS Energia has suffered damages as a direct result of the acts and omissions by Defendants asserted in this Complaint in an amount in excess of US$ 1,719,096.58.

**COUNT I – BREACH OF CONTRACT**
***Alleged Against All Defendants***

50.     LS Energia reaffirms and re-alleges paragraphs 1 through 50 above with the same force and effect as if fully set forth herein.

51.     On April 28, 2010, LS Energia executed the valid and binding EPC Contract with CADAFE/Corpoelec, and Corpoelec agreed to pay US$ 90,600,000.00 to LS Energia.

52.     Under the EPC Contract, coupled with the Directives, Corpoelec agreed to pay LS Energia for the Additional Works to be performed by LS Energia in favor of Corpoelec. True and correct copies of the Directives are attached hereto as Composite Exhibit **"J."**

53.     Pursuant to the EPC Contract and the Directives, which services were fully and satisfactorily performed by LS Energia and acknowledged by Corpoelec, Defendants are indebted to Plaintiffs due to Defendants' breaches of both the EPC Contract and the Directives by failing to pay LS Energia the amount of US$ 1,719,096.58, plus interest, in relation to the withheld amounts for services already fully and properly performed by LS Energia.

54.     Defendants, through Corpoelec, are obligated to make this payment to LS Energia.

55.     Defendants' nonpayment and breach has caused material damages to LS Energia.

**WHEREFORE**, Plaintiffs, LS ENERGIA INC, a Florida corporation, and LS ENERGIA INC, a Panamanian corporation, demand judgment against Defendants, CORPORACIÓN ELÉCTRICA NACIONAL S.A., PETRÓLEOS DE VENEZUELA, S.A., and the BOLIVARIAN REPUBLIC OF VENEZUELA, including compensatory damages in the amount of the remaining

payments due and owing to LS Energia under the EPC Contract and the Directives, prejudgment interest, costs, and all such other relief this Court deems just, fair, and equitable.

**COUNT II – UNJUST ENRICHMENT[9]**
***Alleged Against all Defendants***

56.     LS Energia reaffirms and re-alleges paragraphs 1-50 above with the same force and effect as if fully set forth herein.

57.     Defendants wrongfully gained over US$ 1.7 million worth of power generation output and services, and operation and maintenance thereof, without providing full compensation to LS Energia for said services, output, and operation and maintenance of the Units.  Defendants would be unjustly enriched should they be allowed to withhold payment to LS Energia.

58.     LS Energia conferred a benefit upon Defendants by providing power generation output and services for the people of Venezuela.

59.     Defendants appreciated the benefit that LS Energia conferred upon them and upon the people of Venezuela, voluntarily accepting and retaining the power generation output and services without providing compensation for the output and services.

60.     Defendants had knowledge of this benefit as demonstrated by Defendants request that LS Energia continue to provide management and operation services to Corpoelec, and as evidenced by the incomplete payments which Corpoelec did remit to LS Energia.

61.     It would be inequitable for Defendants to retain the benefit conferred—the substantial amounts of power generation output and services—without paying the value of the benefit conferred to Defendants.

62.     LS Energia has no adequate remedy at law.

_____

[9]LS Energia asserts Count II (Unjust Enrichment) as an alternative to Count I (Breach of Contract).

63.     As a result of the foregoing, LS Energia has suffered damages.

**WHEREFORE**, Plaintiffs, LS ENERGIA INC, a Florida corporation, and LS ENERGIA INC, a Panamanian corporation, demand restitution against all Defendants, CORPORACIÓN ELÉCTRICA NACIONAL S.A., PETRÓLEOS DE VENEZUELA, S.A., and the BOLIVARIAN REPUBLIC OF VENEZUELA, for the value of the benefit conferred, together with prejudgment interest, costs, and all such other relief this Court deems just, fair, and equitable.

<u>**COUNT III – ACCOUNT STATED**</u>
*Alleged Against All Defendants*

64.     LS Energia reaffirms and re-alleges paragraphs 1 through 50 above with the same force and effect as if fully set forth herein.

65.     Prior to the institution of this action, from 2010 through 2015, LS Energia and Defendants had business transactions between them wherein Defendants agreed to pay LS Energia for energy services and output provided.

66.     LS Energia rendered statements and invoices to Defendants, and Defendants did not object to the statements. A true and correct copy of these statements and invoices are attached hereto as Composite **"Exhibit K."**

67.     In fact, Defendants have acknowledged a total debt due and owing to LS Energia in excess of US $1.7M, as seen, for example, in the October 2012 Letter. *See* Exhibit C. In the October 2012 Letter, Corpoelec specifically acknowledges amounts due of US$ 1,689,239.10, plus US$ 50,000, thereby recognizing the debt in writing in excess of the amount sought by LS Energia herein. In addition, LS Energia, via letter dated September 21, 2017, wrote to Corpoelec demanding payment of the withheld amounts totaling US $1,719,096.58.

68.     Defendants promised to pay the withheld amounts to LS Energia upon the completion of the administrative closing of the agreements.

69.     Accordingly, Defendants have an obligation to make payment to LS Energia in the amount of US$1,719,096.58. On or about February 20, 2021, counsel for LS Energia sent the Demand Letter Corpoelec, PdVSA, and Venezuela providing notice of the outstanding debt, following which none of the Defendants objected to the debt.

70.     Defendants have not paid LS Energia all of the amounts owed under the account stated.

**WHEREFORE**, Plaintiffs, LS ENERGIA INC, a Florida corporation; and LS ENERGIA INC, a Panamanian corporation, demand judgment against Defendants, CORPORACIÓN ELÉCTRICA NACIONAL S.A., PETRÓLEOS DE VENEZUELA, S.A., and the BOLIVARIAN REPUBLIC OF VENEZUELA, including compensatory damages in the amount of the remaining payment due and owing to LS Energia under the EPC Contract and the Directives, prejudgment interest, costs, and all such other relief this Court deems just, fair, and equitable.

## COUNT IV – *QUANTUM MERUIT*[10]
### *Alleged Against all Defendants*

71.     LS Energia reaffirms and re-alleges paragraphs 1-50 above with the same force and effect as if fully set forth herein.

72.     This is an action for *quantum meruit* in excess of US$ 90 million, of which over US$ 1.7 million remain unpaid.

73.     Defendants knowingly and voluntarily requested and accepted the power generation services and related operation and maintenance thereof, and other related benefits provided by LS Energia to Corpoelec, and agreed to pay to LS Energia for those services.

---

[10] LS Energia asserts Count IV (*Quantum Meruit*) as an alternative to Count I (Breach of Contract).

74.     LS Energia faithfully and diligently conferred a benefit on Defendants by providing these services to Corpoelec in the ordinary course of business as requested.

75.     LS Energia reasonably expected to be paid for the value of the power generation services, and related operation and maintenance thereof, which it provided to Corpoelec.

76.     Defendants have failed, and continue to fail, to pay LS Energia for the agreed upon reasonable value of the power generation services that LS Energia provided to Corpoelec for the benefit of the Venezuelan citizens and residents.

77.     The circumstances are such that it is inequitable for Defendants to retain the benefits without paying the full value for it.

78.     LS Energia has sustained damages in the amount of US\$ 1,719,096.58, plus interest, which is the reasonable value of the services provided LS Energia to Corpoelec and the Venezuelan people.

**WHEREFORE**, Plaintiffs, LS ENERGIA INC, a Florida corporation; and LS ENERGIA INC, a Panamanian corporation, demand judgment for damages against all Defendants, CORPORACIÓN ELÉCTRICA NACIONAL S.A., PETRÓLEOS DE VENEZUELA, S.A., and the BOLIVARIAN REPUBLIC OF VENEZUELA, for the reasonable value of the power generation services, and operation and management thereof, provided by LS Energia to Defendants in the amount of US\$ 1,719,096.58, plus attorneys' fees, costs, interest, and any such other and further relief as the Court deems necessary and proper.

Dated: April 23, 2021

Respectfully submitted,

**<u>Harold E. Patricoff</u>**
Harold E. Patricoff (Florida Bar No.: 508357)
Attorney E-mail address: hpatricoff@shutts.com
Kristin Drecktrah Paz (Florida Bar No.: 91026)
Attorney E-mail address: kpaz@shutts.com
Ana R. Portal (Florida Bar No.:1022151)
Attorney E-mail address: aportal@shutts.com
SHUTTS & BOWEN LLP
200 S. Biscayne Boulevard, Suite 4100
Miami, Florida 33131
Tel.: (305) 379-9189
Fax: (305) 381-9982
*Attorneys for Plaintiffs LS Energia Inc.*

## **VERIFICATION**

I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.

Executed on April _23__, 2021.

Plaintiffs, LS Energia Inc

By:_____
José Tamayo
President
LS Energia Inc