UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-21642-CIV-WILLIAMS/MCALILEY

LS ENERGIA INC, *a Florida corporation*
and LS ENERGIA INC, *a Panamanian corporation*,

    Plaintiffs,

vs.

CORPORACION ELECTRICA NACIONAL S.A., *a political subdivision of a foreign state*;
PETROLEOS DE VENEZUELA, S.A., *a political subdivision or an agency or instrumentality of a foreign state*; and
BOLIVARIAN REPUBLIC OF VENEZUELA, *a foreign state*,

    Defendants.
_____/

**ORDER DENYING IN PART AMENDED MOTION
REGARDING ALTERNATIVE SERVICE**

Plaintiffs, LS Energia Inc., a Florida corporation, and LS Energia Inc., a Panamanian corporation ("Plaintiffs"), have filed their third in a series of motions regarding their efforts to serve Defendants. Those Defendants are 1) a foreign state, the Republic of Venezuela, ("Venezuela"); 2) a political subdivision of Venezuela, Corporacion Electrica Nacional S.A., ("Corpoelec"), and 3) an agency of Venezuela, Petroleos De Venezuela, S.A. ("PdVSA"). Service of all three Defendants is governed by the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602–1611, and the Court considers here the application of the FSIA to Plaintiffs' multiple efforts at service.

1

The Motion now before the Court is Plaintiffs' Amended Motion in Support of an Order Authorizing Service by Mail on Defendants (the "Amended Motion") (ECF No. 37), which the Honorable Kathleen M. Williams referred to me. (ECF No. 6). Defendants have not made an appearance in this case, and thus there is no memorandum in response. I give my reasons here for denying Plaintiffs' Amended Motion. I turn first to the FSIA's strict requirements for service.

## I. The Foreign Sovereign Immunities Act

The FSIA "establishes a comprehensive framework for determining whether a court … may exercise jurisdiction over a foreign state." *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 610 (1992). It sets forth the grounds for subject matter and personal jurisdiction and provides the "sole basis for obtaining jurisdiction over a foreign sovereign in the United States." *Id.* at 611 (citation and quotation marks omitted). This includes the "sensitive task" of service on a foreign government, and courts require "strict adherence" to the statute. *Barot v. Embassy of the Republic of Zambia*, 785 F.3d 26, 27 (D.C. Cir. 2015).

Regarding personal jurisdiction, the FSIA provides that it exists "where service has been made under section 1608 of this title." 28 U.S.C. § 1330(b). Section 1608 has two subsections: the first, § 1608(a), governs service to foreign states and political subdivisions (here, Venezuela and Corpoelec), and the second, § 1608(b), governs service upon an agency or instrumentality of a foreign state (here, PdVSA). Subsection (a) sets out four different means of service and subsection (b) sets out three. While there is considerable overlap between the methods of service in the two subsections, they are not identical.

The first method of service under both subsections is "by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision", 28 U.S.C. § 1608(a)(1), or the "agency or instrumentality", *id*. at (b)(1).

If no special arrangement exists, then the second method of service under both subsections provides for delivery "in accordance with an applicable international convention on service of judicial documents". *Id.* at (a)(2), (b)(2). Most often this refers to the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Convention"), Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638. The Hague Convention specifies "certain approved methods of service and 'pre-empts inconsistent methods of service' wherever it applies." *Water Splash, Inc. v. Menon*, 581 U.S. 271, 273 (2017) (quoting *Volkswagenwerk Aktiengesellschaft v. Schlunk,* 486 U.S. 694, 698 (1988)). Subsection (b) provides another option, that subsection (a) does not; it allows service by delivery to "an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process in the United States". 28 U.S.C. § 1608(b)(2).

Plaintiff's Amended Motion asks for authorization to use the third method of service, to serve Defendants by mail. Subsections (a) and (b) of § 1608 have different provisions regarding service, although both allow for service by mail. Subsection (a) provides, in pertinent part, that service may be made "by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned." *Id.* at (a)(3). Subsection (b), on

3

the other hand, provides three different options. It states that the plaintiff may effect service, "if reasonably calculated to give actual notice," by delivery

> (A) as directed by an authority of the foreign state or political subdivision in response to a letter rogatory or request or
>
> (B) *by any form of mail* requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the agency or instrumentality to be served, or
>
> (C) as directed by order of the court consistent with the law of the place where service is to be made.

*Id.* at (b)(3)(A)-(C) (emphasis added).

Only subsection (a) has a fourth method of service, and a plaintiff may turn to it only "if none of the first three methods work[]". *Barot*, 785 F.3d at 27. Under this method, the clerk of the court provides the documents to the Secretary of State in Washington, D.C., who then transmits the papers through diplomatic channels to the foreign state or political subdivision. *Id.* at (a)(4). As I address further below, Plaintiffs have already attempted service by this method. And, as noted, they now wish to take a step back in the hierarchy of § 1608, and attempt service by the third method.

Plaintiffs' back-stepping presents a concern because § 1608 explicitly requires that plaintiffs attempt service in the order provided in the two subsections.[1] Alternatively, a plaintiff need not try a prescribed method of service if it determines that that method of

---

[1] Returning to the language of the statute, § 1608 states that the second method of service – under the Hague Convention – may be attempted "if no special arrangement exists", as set forth in the first method of service. 28 U.S.C. § 1608(a)(2), (b)(2). And service under the third provision may be made only "if service cannot be made under paragraphs (1) or (2)." *Id.* at (a)(3), (b)(3). Finally, the fourth method set out in subsection (a) may be used only "if service cannot be made within 30 days under paragraph (3)." *Id.* at (a)(4).

service is unavailable. *Angellino v. Royal Family Al-Saud*, 688 F.3d 771, 773 (D.C. Cir. 2012); *Peterson v. Islamic Republic of Iran*, 627 F.3d 1117, 1129 n.4 (9th Cir. 2010) (the plaintiff did not have to attempt the first two methods of service because they were "inapplicable").

Courts have been clear that "a plaintiff may not opt to serve a foreign defendant out of order, *i.e.*, by pursuing a less preferred method first, in contravention of the express language of the statute." *Azadeh v. Gov't of Islamic Republic of Iran*, 318 F. Supp. 3d 90, 100 (D.D.C. 2018) (emphases omitted). The Eleventh Circuit has "admonish[ed] those seeking to invoke the FSIA to follow the service provisions it contains", noting that its "framework is designed to insure that foreign defendants will get notice. There is no excuse for departure from the dictates of the statute." *Harris Corp. v. Nat'l Iranian Radio & Television*, 691 F.2d 1344, 1352 n.16 (11th Cir. 1982).

## II.  Procedural history

Plaintiffs filed this suit in April 2021 against Defendants for breach of contract and related state law claims. (ECF No. 1). Boiled down, the Complaint alleges that Plaintiffs contracted with Corpoelec's predecessor to provide electricity for residents of Venezuela and that Corpoelec failed to remit payment in full. (*Id.* at 1, 2 ¶ 1). Plaintiffs seek roughly $1.7 million in damages, plus interest. (*Id.* at 21). They sue Venezuela and PdVSA because they are shareholders of Corpoelec; Venezuela owns a 75% interest and PdVSA owns 25%. (*Id.* at 2 ¶ 4).[2]

---

[2] At a hearing on May 3, 2022, Plaintiffs' counsel advised that they sue PdVSA "because a lot of other litigants have included PdVSA as a defendant, and they are the defendant[] that ha[s] the

Shortly after they filed suit, Plaintiffs filed a motion to authorize service (the "First Motion"). (ECF No. 5). In it, Plaintiffs argued that the only method of service available to them was the fourth method set out in § 1608(a)(4), and they asked that the Court authorize Plaintiffs to serve all three Defendants in this manner. (*Id.*). I granted the motion (ECF No. 10), and the Clerk of the Court transmitted the appropriate documents to the Secretary of State in Washington, D.C. for service on Defendants. After many months the Department of State has not yet indicated that it has transmitted those documents to Defendants, *see* (Emails, ECF No. 37-1), and Plaintiffs have lost hope that they can serve Defendants in this manner.

About nine months after the Court authorized service as Plaintiffs asked, Plaintiffs filed a second motion that asked the Court to authorize Plaintiffs to serve Defendants by mail, under subsections (a)(3) and (b)(3)(B) of § 1608 (the "Second Motion"). (ECF No. 30). I held a hearing on the Second Motion on May 3, 2022.[3] At that hearing I denied the Second Motion and explained my reasons for doing so, which I thereafter noted in a brief Order. (ECF No. 33). Plaintiffs asked for leave to file an amended motion, which I granted. (*Id.*).

Plaintiffs' Amended Motion (ECF No. 37) is now before the Court. Plaintiffs again ask the Court to authorize service by mail, pursuant to 28 U.S.C. § 1608(a)(3) and

---

most assets here in the U.S. So [Plaintiffs] added them more as a matter of convenience to collect than as a -- as a focus of the lawsuit." (ECF No. 36 at 7:18-22).

[3] A transcript of the hearing is filed at ECF No. 36.

(b)(3)(B); and they further ask the Court to vacate its Order that authorized service through diplomatic channels.

## III. Analysis

As with their First Motion, Plaintiffs now argue – persuasively – that service is unavailable to them under the first two methods offered in § 1608(a) and (b). Regarding the first method, "a special arrangement for service" between Plaintiffs and Defendants, § 1608(a)(1) and (b)(1), Plaintiffs advise that there is no such arrangement.

As for the second method, Plaintiffs state that although Venezuela is a signatory to the Hague Convention, this method is also unavailable. In support, Plaintiffs cite decisions of other federal courts that found that in recent years "Venezuela has failed to comply with its obligations to receive and transmit service papers under [the framework of the Hague Convention]." (ECF No. 37 at 8) (alteration in original) (citing *Tidewater Inv. SRL v. Bolivarian Republic of Venezuela*, No. 17-1457-TJK, 2018 WL 6605633, at *5 (D.D.C. Dec. 17, 2018) and *Casa Express Corp. v. Bolivarian Republic of Venezuela*, 21-mc-23103, 2021 WL 5359721 (S.D. Fla. Nov. 17, 2021)).[4]

In its discussion of the Hague Convention, Plaintiffs note that Article 10(a) permits signatories to object to service by mail: "provided the State of destination does not object, the present Convention shall not interfere with – a) the freedom to send judicial documents, by postal channels, directly to persons abroad". (ECF No. 37 at 8) (quoting Hague

---

[4] Plaintiffs also cite *Lovati v. Bolivarian Republic of Venezuela*, No. 19-CV-4793 (ALC) (S.D.N.Y. Nov. 11, 2020). The Westlaw citation for the Court's November 11, 2020, Order, is 2020 WL 6647423. It is not helpful because the question before the *Lovati* Court was whether the plaintiffs properly served Venezuela through a special arrangement, not the Hague Convention.

Convention, art. 10(a)). Venezuela lodged its objection, under Article 10(a), to service by postal channels, and thus Plaintiffs cannot serve Defendants under the Hague Convention by mail. *Id.* With service by mail in Venezuela not an option, and the documented history of Venezuela not engaging in service under the terms of the Hague Convention, the Court is persuaded that the second method of service set forth in § 1608(a) and (b) is unavailable to Plaintiffs.

The Court turns next to service by mail – the third method – which Plaintiffs now request. Here, Plaintiffs make an about-face. In their First Motion, Plaintiffs persuaded the Court that this method is unavailable. They argued that Venezuela's objection under the Hague Convention to service by mail rules out service under § 1608(a)(3) and (b)(3)(B), which is itself, service by mail. (ECF No. 5 at 4). This reasoning persuaded this Court to issue its first Order regarding alternative service, (ECF No. 10), that authorized Plaintiffs to not attempt service by mail, and to proceed directly to the final service provision of § 1608(a), to serve Defendants via diplomatic channels.[5]

---

[5] Notably, subsection (b), which governs service upon Defendant PdVSA, does not include the fourth method of service, via the State Department, that is offered in subsection (a). At the very end of the First Motion Plaintiffs made the conclusory assertion – unsupported by any legal authority – that it could nonetheless attempt to serve PdVSA in this manner upon court order because subsection (b)(3) allows for service (on PdVSA) "as directed by order of the court consistent with the law of the place where service is to be made." (ECF No. 5 at 5-6) (quoting § 1608(b)(3)(C)). This Court is unaware of any authority that the law of Venezuela ("the place where service is to be made") contemplates service of Venezuelan agencies or instrumentalities via the United States Department of State. Unfortunately, this Court did not catch this error in Plaintiffs' First Motion. The Court should not have authorized service upon PdVSA under the provision of § 1608(a)(4) in its first Order, (ECF No. 10). In this Order, the Court vacates that portion of its first Order.

Plaintiffs now make the opposite argument: that Venezuela's objection to service by mail under Article 10 of the Hague Convention does not bar Plaintiffs from now attempting to serve all three Defendants by mail, and therefore the Court should permit Plaintiffs to attempt service under subsections (a)(3) and (b)(3)(B). No precedent binds this Court regarding how to resolve Plaintiffs' contradictory positions. In my assessment, however, the weight of authority supports the conclusion that Plaintiffs' first position was correct; that is, that Venezuela's objection to service by mail under Article 10 of the Hague Convention leaves service by mail on Defendants unavailable under § 1608(a)(3) and (b)(3)(B).

I turn first to the Supreme Court's decision in *Water Splash, Inc*., where the Court concluded that the Hague Convention permits service by mail "if two conditions are met: first, the receiving state has not objected to service by mail; and second, service by mail is authorized under otherwise-applicable law." 581 U.S. at 284. Since *Water Splash*, a number of lower courts have considered the question now before this Court and have concluded that a plaintiff cannot serve a foreign state by mail, under § 1608(a)(3) and (b)(3)(B), when it has objected to service by mail under the Hague Convention.

*Azadeh v. Iran*, *supra*, is one of those cases. Like here, service under the first two methods in § 1608(a) were unavailable in *Azadeh*; there was no "special arrangement" for service between the parties, and Iran was not a signatory to the Hague Convention. Although it was in dicta, the Court specifically answered the question before this Court:

> Apparently, some twenty-four countries specifically objected to service by mail when they acceded to the Hague Convention, and thus the method of service proscribed in section 1608(a)(3)

9

> *is categorically unavailable* when attempting to serve those countries.

*Azadeh,* 318 F. Supp. 3d at 99 (emphasis added). The *Azadeh* Court noted this to contrast the fact that Iran, the defendant there, was not a signatory to the Hague Convention and had accepted service by mail with "some frequency" which meant that, in that case, the plaintiff had an obligation to attempt to serve Iran by mail under § 1608(a)(3), before it could attempt service under (a)(4). *Id.*

*Azadeh*'s strict enforcement of § 1608's hierarchy of service is also noteworthy. The plaintiff there made her first service attempt – successfully, under § 1608(a)(4) – via the State Department. When Iran did not respond to the complaint, the plaintiff sought a default judgment. The Court declined to enter that judgment because the plaintiff's failure to follow the hierarchy of service – and to first try to serve Iran by mail under subsection (a)(3), before it proceeded to service under subsection (a)(4) – deprived the Court of personal jurisdiction over Iran. The Court directed the plaintiff to attempt to serve Iran by mail, which it did, and when that did not work, to then try to re-serve Iran by diplomatic means, under subsection (a)(4); that is, to follow the hierarchy of service set out in the FSIA. *Azadeh*, 318 F. Supp. 3d at 99-101. The Court wrote:

> It is clear that Congress meant for section 1608(a) to establish a relative *hierarchy* of service methods—in "descending order of preference"—and that alone suggests that a plaintiff may not opt to serve a foreign defendant *out of order, i.e.*, by pursuing a *less* preferred method first, in contravention of the express language of the statute.

*Id.* at 100 (alteration and citation omitted). Here, Plaintiffs' backward march through § 1608 is plainly improper.

10

Plaintiffs argue that a decision from another division of this Court, *Isaac Industries, Inc. v. Petroquimica de Venezuela, S.A.*, No. 19-cv-23113, 2021 WL 4976642 (S.D. Fla. Jul 7, 2021), *report and recommendation adopted*, 2021 WL 3907803 (S.D. Fla. Sept. 1, 2021), issued after Plaintiffs filed their First Motion, represents a change in the law that justifies their now asking the Court to authorize service by mail under § 1608(a)(3) and (b)(3)(B).[6]

In *Isaac Industries*, the defendants, one of which was PdVSA, were all agencies and instrumentalities of Venezuela, and service upon them was governed by § 1608(b). *Isaac Industries, Inc.*, 2021 WL 4976642, at *2. After the plaintiff there unsuccessfully attempted to serve the defendants under the Hague Convention, the Court wrote: "Because the Court finds that service cannot be made under the Hague Convention, Plaintiff may proceed to complete service [by mail] as prescribed by paragraph (3) ...." *Id.* at *5. The Court's analysis was confined to the statutory language of § 1608(b). Notably, the defendants, who were represented, objected to the plaintiff attempting to serve them by mail under § 1608(b)(3)(B) because Venezuela had lodged its objection, under the Hague Convention, to service by mail. *Id.* at *2 ("Defendants argue that Plaintiff is not entitled to attempt service under Section 1608(b)(3)(B) because service by mail is not a permissible means of service under the Hague Convention."). The *Isaac Industries* Court did not address this argument and it did not address any decisions of other courts that have concluded, on the

---

[6] Notably, *Isaac Industries* is the *only* legal authority Plaintiffs rely on to justify both 1) service upon Defendants by mail, and 2) their disregard of the hierarchy in § 1608.

11

merits, that Venezuela's objection under Article 10 of the Hague Convention to service by mail precludes service by mail under subsection (a)(3).[7] *See, e.g.*, *Tidewater Inv. SRL*, 2018 WL 6605633, at *5 (service by mail under § 1608(a)(3) was unavailable because "Venezuela expressly objected to service by mail when it acceded to the Hague Convention"). Since *Isaac Industries*, other courts have concluded that service by mail is not an option for Venezuela under (a)(3). *See, e.g.*, *ConocoPhillips Petrozuata B.V. v. Bolivarian Republic of Venezuela*, No. 19-cv-0683, 2022 WL 3576193, at *5 (D.D.C. Aug. 19, 2022) ("As to the third method, Petitioners assert that it is inapplicable because Venezuela has formally objected to service by mail.... Other Courts in this District have concluded that, in these circumstances, it is appropriate to move to the fourth method, and the Court agrees."); *Chickpen, S.A. v. Bolivarian Republic of Venezuela*, No. 21 Civ. 597, 2022 WL 1684275, at *2 (S.D.N.Y. May 26, 2022) (finding that Venezuela was properly served via the State Department, noting that service under § 1608(a)(1), (2) and (3) was "unavailable" for several reasons, to include that "Venezuela has formally objected to

---

[7] This was true for both the report and recommendation and the order that adopted it. The analysis in the order was as follows:

> While service may not be allowed under Venezuelan law as Defendants argue, the plain language of [FSIA] still allows for service by mail requiring a signed receipt as the R&R recommends. Defendants state that Venezuela objects to Article 10(a) of the Hague Convention which allows "send[ing] judicial documents, by postal channels, directly to persons abroad." However, because service under the Hague Convention is impossible, the Court looks to the next applicable subsection of the FSIA (§ 1608(b)(3)(B)) and it allows service by mail.

*Isaac Industries*, 2021 WL 3907803, at *2 (second alteration in original).

12

service by mail"); *Casa Express Corp.*, 2021 WL 5359721, at *1 (noting that only the fourth method of service under § 1608 is available for Venezuela). Another court reached the same conclusion regarding Turkey, which, like Venezuela, has objected to service by mail under the Hague Convention. *See Ghazarian v. Republic of Turkey*, No. CV 19-4664 PSG (Ex), 2020 WL 3643483, at *2 (C.D. Cal. Mar. 30, 2020).

When the *Isaac Industries* Court decided to permit the plaintiff to serve PdVSA by mail under the third method of § 1608(b), it did not address Venezuela's express objection to service by mail under the Hague Convention, and for this reason, I do not find the decision helpful here. Rather, I find the decisions cited above, that addressed this question directly, more persuasive.

The Court is sympathetic to Plaintiffs' frustration in trying to serve Defendants. "But there are circumstances in which the rule of law demands adherence to strict requirements even when the equities of a particular case may seem to point in the opposite direction." *Republic of Sudan v. Harrison*, 139 S. Ct. 1048, 1062 (2019). Service on a foreign state, particularly when this country does not enjoy friendly relations with that nation, is rarely simple. Legal action against a foreign state, its subdivisions and instrumentalities can impinge upon the relationship between nations, and thus service upon them is a "sensitive task". *Barot*, 785 F.3d at 27. Congress established the framework for service under § 1608, and "designed [it] to insure that foreign defendants will get notice." *Harris*, 691 F.2d at 1352 n.16. This country and Venezuela are both signatories to a treaty that provides the opportunity for nations to object to service by mail, and Venezuela did just that. Venezuela has thus notified this country that it is not agreeable to service by mail.

That being so, this Court has no reason to expect that Defendants will get notice of a suit by mail. For these reasons the Court cannot approve service upon Defendants under subsections (a)(3) and (b)(3)(B), which is service using a method that Venezuela has expressly rejected.

**IV.  Conclusion**

For the foregoing reasons, the Court **DENIES IN PART** Plaintiffs' Amended Motion in Support of an Order Authorizing Service by Mail on Defendants (ECF No. 37). The Court does not authorize Plaintiffs to attempt to serve Defendants pursuant to § 1608(a)(3) and (b)(3)(B). The Court does **VACATE** that portion of its Order, (ECF No. 10) that authorized Plaintiffs to attempt to serve Defendant PdVSA by diplomatic channels, under § 1608(a)(4).

DONE and ORDERED in Miami, Florida, this 6th day of January 2023.

_____
CHRIS MCALILEY
UNITED STATES MAGISTRATE JUDGE

cc:  The Honorable Kathleen M. Williams
  Counsel of record